Judge Underwood,
delivered the opinion of the court.
Upon the death of George Stigall, his widow, Ann Stigall, and Jonn Wilkerson, were appointed his administratrix and administrator. Whereupon they executed an administration bond with John Kincaid and Hezekiah Fares, their sureties, dated in 1816.
Miller and his wife, and Eliza Jane, a.daughter of *569 George Stigall, deceased, filed their bill in 1825, against Ann Stigall, who at the filing of the bill was Ann Anderson, (she having married since the istration granted to her) and her husband James W. Anderson; also against William Faris and Henry Baughman, the executors of the will of John Wilkerson, then deceased, who was administrator, ds aforesaid; and likewise against Kincaid the surety, and the other distributees of said George Stigall, for the purpose of having a settlement of the estate, and obtaining their distributable share.
Hezekiah Faris was not made a defendant, and as a reason for not having done it, the bill alleges that he died insolvent in Texas, a proyince of Mexico, and that no administration had been granted to any one.
It seems that Ann Anderson, the administratrix, died pending the suit. That before her death, and whilst she was a feme covert, she made a will, devising her estate to Wilkerson Anderson, the issue of the second marriage; and appointed her husband, James W. Anderson, her executor. From said Ann’s will, it appears that the estate devised to her son Wilkerson, consisted, in part, at least, of a tract of land which her father, John Wilkerson, had devised to her, in addition to all her interest in her father’s estate. Other lands are mentioned, but how she derived her title, is not stated.
By a supplemental bill, Wilkerson Anderson is made a party defendant. It is alleged in the supplement, that the estate of said Ann, either passed by her will or descended to her heirs, of whom the complainant Eliza was one. James W. Anderson, the executor, is made a party; and in answer to a call on him, he states that his testatrix (as he was informed) had sufficient money and personal property coming to her from her father’s estate, to satisfy any demand against her; and he prays that the complainants may be compelled to resort first to that fund, before touching the realty devised by her will to Wilkerson Anderson.
The accounts were referred to auditors for a settlement and repórt.
From their report it seems that administrator and administratrix were chargeable with $523 05 cents, *570 on account of the sales and property belonging to the intestate, with interest from the 5th of October, 1819, and $803 for the hire of slaves, with interest on two-thirds thereof, from the 5th of October, 1819, and interest on the residue, from the 1st of January, 1820. The auditors charge for the hire of slaves, an additional sum of $107 50 cents, with interest on two thirds from 5th October, 1819, and on the balance from 1st January, 1820. Some other items are reported which we deem it useless to notice. Of the sums reported the complainants were entitled to the sixth part.
Decree,which directs prop-hands'ofan administrator taken to *° satisfy the de-faleation of mi^istrator8U erroneous. ’
*570 The court decided in favor of the complainants $321 82, to be levied of the goods and chattels, in the hands of John W. Butcher, administrator de bonis non of the estate of George Stigall deceased, (said Butcher having been appointed alter the death of Ann Anderson, and made party to the suit) and in the hands of James W. Anderson, executor of the estate of Ann Anderson, deceased; also (of) the goods and chattels in the hands of William Paris, and Henry Baughman, executors of the last will of John Wilkerson, deceased, which remain in their hands unadministered; also of the estate, goods and chattels descended from Ann Anderson, deceased, to the defendant Wilkerson Anderson, and of the estate, goods, and chattels of the defendant John Kincaid, &c.”
The decree then provides that if Kincaid is compelled to pay the money, in that event he shall have a decree over against the executors of John Wilkerson, he having induced Kincaid to become surety; and this branch of the cause is retained and kept open, and made dependent upon the collection of the money. Time is given Wilkerson Anderson to open the decree after his arrival at full age. The refunding bond executed by M. C. Miller, is approved, and costs given against all the defendants except the guardian of the infant distributees.
The foregoing decree is erroueous in several respects, and must be reversed.
So much of the decree as directs a levy upon the goods and chattels in the hands of Butcher, is clearly erroneous. The amount of the $321 82 cents is made *571 up of items with which Butcher never had any concern, and if there was property in his hands belonging to the estate of his intestate, we do not perceive reasonable ground upon which that property could be taken to satisfy the defalcations of the deceased administrator and administratrix. Such a course might operate to the destruction of half the distribu-ttibie fund. To produce such a result it would only be necessary for the first administrator to waste half the assets and then die, let the administrator de bonis non reduce to possession the other half, and when a decree is obtained for the half wasted, have it satisfied out of the property in the hands of the administrator de bonis non. If a deceased administrator has wasted the assets, it constitutes a personal charge upon him and his sureties for their value. If the administrator de bonis non is compelled to pay this decree, he would have no remedy against the representatives of the deceased administrator and administratrix, to recover the amount of sales from them; see Slaughter &c. vs. Froman and wife, V. Mon. 20; and Graves vs. Downey, III. Mon. 356.
When there a<l-bounTin the same bond, ea°b is liable uteaTfor'the* acta of the other.
This last cited case shews likewise, that the admin-trator de bonis non could have no remedy, against a previous administrator, for money collected for the hire of slaves belonging to the estate.
We approve so much of the decree as holds the executor of the administratrix, and the executors the administrator Wiikerson and John Kincaid,jointly responsible, to the extent of assets left by the intes-tateStigali. Such responsibility results from the nature of the administration bond, and is clearly settled in the cases of Moore &c. vs. Waller’s heirs, I. Marsh, 491, and South’s heirs vs. Hoy’s heirs, III. Mon.95. This last was a case founded upon an executor’s bond, but the same principle growing out of the statute regulating the condition of the bonds of executors and administrators, applies with equal force to the bonds of the latter, and where there are two administrators bound in the same bond, as here, renders each liable to distributees for the acts of the other. The case of Moore’s administrator vs. Tandy, &c. III. Bibb, 98, only shews that a devastavit by one administrator will not fix a devastavit on his co-administrator, accord *572 ing to the principles of the common law, although may ^ave executed an administration bond jointly.
Hire or profits of slaves accruing while trator «tains (and has gal right to arfasscts, and security of administrator is, ponslble^or6'" thein.
Slaves vest in the executor toga's'chat-' tels.
Title of an heir to slaves píete without exeeTtofof administrator Devisee's title to slaves is compee asSentof the executor,
*572 The hire of the slaves received by Ann Stigall, the administratrix, was for the years 1817-18-19. No guardian was appointed for the infant distributees, until November 1819, and their slaves were hired opt by the guardian for the year 1820. It is a question of importance whether the hire accruing between the date of the administration and the surrender of the slaves to the guardian, make a part of the assets for which the surety Kincaid is liable to the distributees. By an act of 1798 (II. Digest, 1155) slaves descend as lands, and but for the provisions of that act, which authorize executors and administrators to sell slaves for the payment of debts, and some other provisions presenting them in the light of chattels, there could be no doubt that the title to the slaves would vest in the heirs, without the assent of the executor or administrator, and in that event the hire would not be assets. In this case it was not necessary to sell any of the slaves for the payment of the debts; the administrator had a right to retain them, at *east unt^ distribution could regularly be demanded to law, and until the condition of the estate should render it prudent to surrender them. DurinS tllis period we think the hire or profits of the slaves should, like the profits of a term for years, 0r of a lease for years of tythes, (see Bacon’s Abridg. Title, Executors and administrators, letter H) be regarded as assets, and consequently Kincaid is as much responsible for them as for assets arising from any other source.
In the case of Woodyard’s heirs vs. Threlkeld, I. Marshall 10, this court considered slaves as vesting *n executor or administrator as chattels, notwithstanding the act of 1798, and that the title of the heir was not complete without the assent of the per-sonai representative; and such has been the uniform doctrine of this court.
The act of 1800 (II. Digest’ 1247) construed in Groves vs. Luckey, I. Mar. 74, is only applicable to devisees of slaves. These take by virtue of the will, without the assent of the executor, see also the case of Carroll vs. Connett, decided October term 1829, *573 where it is decided that the hire of slaves in the hands of the administrator was assets.
Compl’t will j^chancehor recovering from others a sum of money he will be bound tore-fu0lJ.
wiH of a feme covert is void, “"jes.8 exficu' anceo/'iT511" power conferred by some oiMiéed3
It satisfactorily appears from the allegations of the supplemental bill, as well as from the instrument exhibited, purporting to be the will of Ann Anderson, that she left real estate. It moreover seems that the principal part, if not all the money which the complainants are entitled to, should be paid out of her property, and that the complainant Eliza is one of her heirs. Now the equitable principle is too obvious to need enforcement by argument or authority, that the complainants ought not to be aided, by the chancellor, in recovering from others a sum which, as heirs, they would be bound to refund. Before the decree therefore can be sustained to any extent against Kincaid or the executors of Wilkerson, the chancellor should have inquired into the value of the estate descended upon the complainants from Ann Anderson, and if it amounted to as much as their distributable share, no decree should have been rendered against Kincaid or Wilkerson’s executors. If the estate descended did not amount to so much, then for the deficiencies, there would be good reason to hold them responsible. For children ought not to lose a larger interest derived from their father, and which their mother may have squandered, merely because they inherited a smaller interest from their mother.
But it is contended that the will of Ann Anderson passed the whole of her estate to her son by the second marriage, and consequently the complainants acquired no interest in her real estate as heirs. The will on its face shows that Ann Anderson was, at the time of its execution, a feme covert; and hence it is absolutely void, unless it had been made in pursuance of a power conferred by some previous will or deed. It is accordingly contended that we are bound to presume in favor of the validity of the will of Ann Anderson, upon the ground that the supplemental bill seems to acknowledge the fact that the county court had admitted it to record; a thing which would not have been done but upon shewing to the satisfaction of the county court, that the will was made in execution of a power. It clearly appears from the whole record that the will was never admitted to record by *574 tbe county court, and hence the fact does not exist which is made the foundation of the whole argument. are therefore relieved from a consideration of the eifect which may result from recording the will of a feme, covert, and whether that fact would be sufficient to render it valid until it is regularly annulled thereafter by an appropriate judicial proceeding. If upon the return of the cause the will of Ann Anderson has been recorded, the question whether it is void because made by a feme covert and not in execution of a power may probably be litigated, and then it will be time enough for us, should the cause return here, to dispose of the questions which may arise in regard to it.
Owsley and Anderson for plaintiffs; .Mills and Brown for defendants.
There was no necessity on the part of the complainants to pursue the real estate descended to their co-heirs from Ann Anderson, before resorting to the parties bound by the administration bond.
We have deemed it proper to express the foregoing views because they may have influence, upon the return of the cause, in correcting errors which otherwise might again occur.
We conceive that the personal representative of Ann Anderson is a necessary party. If her interest in her father’s personal estate is equal to what her husband states it to be, her personal representative may be able to pay the complainants their share of John Stignll’s goods and chattels, without burdening her sureties.
We do not intend to conclude the parlies and bind them on the return of the cause to abide the report of the auditors.
Decree reversed with costs, and cause remanded for proceedings not inconsistent herewith.